**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

08  1471

WEINSTEIN, J.

-------------------------------------------------------x

LAURIE G. ROBBINS, Derivatively on
Behalf of the Nominal Defendant,

                    Plaintiff,

        vs.

SIDNEY TAUREL,  ALAN BREIER, JOHN
LECHLEITER, CHARLES M. BEASLEY,
JR.,   GERHARD   MAYR,   GARY   D.
TOLLEFSON, WINFRIED BISCHOFF, J.
MICHAEL    COOK,    FRANKLYN    G.
PRENDERGAST, KATHI P. SEIFERT,
GEORGE M.C. FISHER, ALFRED G.
GILMAN, KAREN N. HORN, MARTIN S.
FELDSTEIN, J. ERIK FYRWALD, ELLEN R.
MARRAM,  and JOHN DOES 1-10,

                    Defendants,

      and

ELI LILLY & COMPANY,

              Nominal Defendant

-------------------------------------------------------x

Civil Action No.

VERIFIED  SHAREHOLDER'S
DERIVATIVE COMPLAINT

MANN. M.J.

FILED
U.S. DISTRICT COURT E.D.N.Y.
★   APR 0 9 2008
BROOKLYN OFFICE

**JURY TRIAL DEMANDED**

Plaintiff, by her attorneys, submits this shareholder's derivative complaint against the

defendants named herein.   The allegations are asserted on information and belief after due

investigation of counsel, except as to those matters which relate to plaintiff and her own acts, which

are asserted on personal knowledge.

## INTRODUCTION

1.     This shareholder's derivative action is brought by a long-time shareholder of

Eli Lilly & Company ("Lilly" or "the Company"), on behalf of Lilly and for its benefit.

2.      The shareholder's derivative action is the only vehicle through which Lilly shareholders can ensure that Lilly insiders are personally held accountable for various breaches of fiduciary duty that harmed the Company.  These include breaches which led to: (a) class actions filed in this District asserting an open market securities fraud; and (b) personal injury actions asserting harm from one of Lilly's leading drugs, Zyprexa.  Lilly insiders promoted, encouraged and (through knowing inaction) permitted Lilly's unsanctioned off-label use of Zyprexa in violation of federal law.

3.      The aforementioned securities class action asserts, among other things, that Lilly insiders engaged in a lengthy campaign to fraudulently conceal the health risks and side effects of Zyprexa from investors, and from patients. The most prominent and severe of these risks and side effects include the development of diabetes, increased weight gain and obesity, and increased blood sugar. Such materially false and misleading information allegedly harmed shareholders who purchased during a class period from March 28, 2002 through December 22, 2006.

4.      The insiders' unlawful acts in promoting off-label uses and concealing serious side effects exposes Lilly to  huge liability for personal injury awards and settlements.

5.      The *New York Times* has recently reported that Lilly and federal prosecutors are discussing a settlement of a civil and criminal investigation into the company's marketing of Zyprexa that could result in Lilly's paying more than $1 billion to federal and state governments. Indeed, since September 2005, Lilly has already paid $1.2 billion to settle claims by patients or their survivors alleging that Zyprexa caused or contributed to diabetes or high blood-glucose levels and that Lilly inadequately tested for and warned about potentially harmful side effects of Zyprexa.  Many of the claims also allege that the Company improperly promoted the drug. A

reported 1200 unsettled similar claims remain, as do the aforementioned class actions. The products liability litigation has led to public disclosure of internal Lilly documents suggesting that Lilly withheld from the federal Food and Drug Administration ("FDA") and the public clinical evidence of the severity of Zyprexa's metabolic side effects, and also that the Company embarked on a campaign to wrongfully promote Zyprexa for off-label uses. Lilly is under investigation by the federal government for the off-label promotion of Zyprexa as well as Medicaid best price violations and False Claims Act violations, and faces parallel investigations by over 25 states, as well as numerous suits by States to recover damages relating to Zyprexa.

6.      Defendants named in this lawsuit breached their fiduciary obligations to exercise a high degree of due care, loyalty and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. Because Lilly's directors will not authorize this lawsuit in the face of the pending class actions and personal injury claims, as well as the various governmental investigations, and because they face substantial liability for consciously disregarding and failing to remediate all of these wrongful acts, demand on the Board is excused as futile. Each of Lilly's 12 directors has served on the Board for years. Nine of these 12 joined the Board prior to 2003. The remaining three have served since 2005.

7.      Because of the insiders' acts of fraudulent concealment, and the directors' conscious disregard of their duties, the true facts regarding Zyprexa and the unlawful marketing campaign were not substantially known until late 2006, and investors and others were deterred from ascertaining accurate information regarding these matters by repeated and prolonged misrepresentations by corporate insiders.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331 (federal question jurisdiction) insofar as this action arises under both Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. 78j(b), pursuant to which there is a private right of action for contribution, and Section 21D of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act. Prior to Congress having enacted an express provision for contribution under Section 21D of the Exchange Act, the United States Supreme Court recognized that a federal cause of action existed for contribution pursuant to Section 10(b) of the Exchange Act and Rule 10b-5. *See Musick, Peeler & Garrnett v. Employers Insurance of Wausau,* 508 U.S. 286 (1993). Thus, pursuant to federal statutory law and Supreme Court authority, this Court has original federal question jurisdiction over the federal contribution claim alleged herein.

9.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as plaintiff is a citizen of the State of Rhode Island, and no defendant is a citizen of the State of Rhode Island. Therefore, complete diversity of citizenship exists. The amount at issue exceeds the jurisdictional amount, exclusive of fees and costs.

10.     This Court also has subject matter jurisdiction over the pendent state law claims asserted herein pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction), since this statute provides supplemental jurisdiction over state law claims that, together with the federal claims, may be deemed all part of the same case or controversy. This is not a collusive action to confer jurisdiction in this Court which it would not otherwise have.

11.    Venue is proper in this Court because many of Plaintiff's claims arose in this District, including contribution claims for violations of the federal securities laws; and Lilly has suffered and will continue to suffer harm in this District. The Judicial Panel on Multidistrict Litigation has designated this District for the litigation of all Zyprexa personal injury actions. The securities class actions are also proceeding in this District.

## PARTIES

12.    Plaintiff Laurie G. Robbins is a long time holder of Lilly common shares, and was so prior to the time of the transactions of which Plaintiff complains. Plaintiff will adequately and fairly represent the interests of Lilly and its shareholders in enforcing and prosecuting their rights. Plaintiff is a citizen of the State of Pennsylvania.

13.    Nominal Defendant Lilly is an Indiana corporation with its principal place of business in Indianapolis, Indiana. It engages in the discovery, development, manufacture, and sale of pharmaceutical products worldwide. Its products treat a wide variety of medical and psychological disorders. Zyprexa is the Company's leading seller, with $4.4 billion in sales in 2006. Lilly is a citizen of Indiana.

14.    Defendant Sidney Taurel ("Taurel") has been the Company's Chairman and Chief Executive Officer since January 1999. He also served as president from February 1996 through September 2005. He joined the company in 1971. Taurel has served on Lilly's Board of Directors since 2005. Taurel is a citizen of Indiana.

15.    Defendant John C. Lechleiter ("Lechleiter") has been the Company's President and Chief Operating Officer since October 2005. He joined Lilly in 1979 as a senior organic chemist and has held management positions in England and the U.S. He was named vice

5

president of pharmaceutical product development in 1993 and vice president of regulatory affairs in 1994. In 1996, he was named vice president for development and regulatory affairs. Lechleiter became senior vice president of pharmaceutical products in 1998, and executive vice president, pharmaceutical products and corporate development in 2001. He was named executive vice president, pharmaceutical operations in 2004. Lechleiter has served on Lilly's Board of Directors since 2005. Lechleiter is a citizen of Indiana.

16.    Defendant Alan Breier ("Brier") is vice president for medical and chief medical officer for Lilly since August 2003. He is a member of the Lilly Research Laboratories policy committees and the company's senior management council. Previously, Breier was a Lilly clinical research fellow, Zyprexa product team leader, and vice president of pharmaceutical products for Lilly. Breier is a citizen of Indiana.

17.    Defendant Charles M. Beasley Jr. ("Beasley") is Chief Scientific Officer, Global Product Safety for the Company. Beasley is a citizen of Indiana.

18.    Defendant Gary D. Tollefson ("Tollefson ") was employed by the Company as President of its Neuroscience product group. During his career with Lilly, he led the efforts resulting in the launch and/or product lifecycle implementation for several important neuroscience products, including the antidepressant Prozac, Strattera for attention-deficit (ADHD), Symbyax for bipolar depression, Cymbalta for major depression/neuropathic pain and the psychotropic Zyprexa. Tollefson is a citizen of California.

19.    Defendant Gerhard N. Mayr ("Mayr") was until March 2004 Executive Vice-president of the Company for Pharmaceutical Operations. On information and belief, Mayr is a citizen of Germany.

20.    The following Defendants, all of whom are Lilly directors, joined the Board in the

year listed in parentheses, and on information and belief are citizens of the following states or countries: Winfried Bischoff (2000)(United Kingdom), J. Michael Cook (2005)(New York), Franklyn G. Prendergast (1995)(Minnesota), Kathi P. Seifert (1995)(Wisconsin), George M.C. Fisher (2000)(New York), Alfred G. Gilman (1995)(Texas), Karen N. Horn (1987)(New York), Martin S. Feldstein (2002)(Massachusetts), J. Erik Fyrwald (2005)(Iowa), and Ellen R. Marram (2002)(New York). These defendants shall, from time to time, be referred to herein as the "Director Defendants."

21.    Defendants denominated John Does 1-10 are Lilly executives whose identities are presently unknown to Plaintiff, and who played a substantial role in the wrongful marketing practices and the concealment of serious Zyprexa side effects. Such persons had a fiduciary duty to Lilly that required them to engage in no unlawful acts that might harm Lilly.

22.    The individual defendants referenced above in ¶¶ 14-19 are referred to herein as the "Class Action Individual Defendants." These defendants have been named as defendants in the securities class actions (the "Securities Class Action").

23.    Because of the Class Action Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its drug products, the results of its drug testing, its business, operations, operational trends, financial statements, markets and present and future business prospects *via* access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and *via* reports and other information provided to them in connection therewith.

24.    The Director Defendants, by reason of their corporate directorship and/or

executive positions, are fiduciaries to and for the Company's shareholders, which fiduciary relationship requires them to exercise their best judgment, and to act in a prudent manner and in the best interests of the Company's shareholders.

25.     Accordingly, each Director Defendant owed Lilly and its shareholders the duty to exercise due care, diligence, and loyalty in the management and administration of the affairs of the Company and in the use and preservation of its property and assets, and owed Lilly the duty of full and candid disclosure of all material facts related thereto.

26.     To discharge these duties, the Director Defendants were required to exercise reasonable and prudent supervision over Lilly's management, policies, practices, controls, and financial and corporate affairs.  By virtue of this obligation of ordinary care and diligence, the Director Defendants were required, among other things, to:

        a.     manage, conduct, supervise, and direct the employees, business, and affairs of Lilly in accordance with federal laws, rules and regulations, and not to violate federal law, rules, and regulations, including the criminal laws of the United States;

        b.     ensure the prudence and soundness of policies and practices undertaken or proposed to be undertaken by Lilly;

        c.     remain informed as to how Lilly was, in fact, operating, and upon receiving notice or information of unsafe, imprudent or illegal practices, to make reasonable investigation in connection therewith, and to take steps to correct that condition or practice;

        d.     supervise the preparation, filing, and/or dissemination of any SEC filings, press releases, audits, reports, or other information disseminated by Lilly, and to examine and evaluate any reports of examinations, audits, or other information concerning the financial state of Lilly, and to make full and accurate disclosure of all material facts concerning, *inter alia*, each

of the subjects and duties set forth above;

       e.     exercise reasonable control and supervision over Lilly's officers and employees;

       f.     maintain and implement an adequate system of internal controls at Lilly, including financial, accounting, and management information systems;

       g.     examine and evaluate any reports of examinations or investigations by government agencies concerning the practices, products, or conduct of Lilly officers, directors, or employees, to supply true, accurate, and complete information to all government agencies at all times, and to ensure that no information supplied to any government agency is incomplete, false, or misleading.

       h.     assure that the assets of the Company and its subsidiaries are utilized in the most effective manner and that and capital expenditures and appropriations are reviewed; and

       i.     preserve and enhance Lilly 's reputation as befits a public Company, and to maintain public trust and confidence in Lilly as a prudently managed institution fully capable of meeting its duties and obligations.

## SUBSTANTIVE ALLEGATIONS

27.     The Securities Class Action charges Lilly and certain of its officers and directors with violations of the Securities Exchange Act of 1934 for disseminating false and misleading statements concerning Zyprexa, the Company's best-selling product. More specifically, as best can be determined given the Court's Order of August 17, 2007 that the Consolidated Securities Class Action Complaint be filed under seal, it is alleged that the Lilly insiders failed to disclose and misrepresented material adverse facts which were known to defendants or recklessly

disregarded by them. These included:

      a.     that they were aware of the clear link between Zyprexa and diabetes; and yet failed to warn the public at large of the serious and material risks associated with Zyprexa use;

      b.     that they had engaged in an illicit scheme to offset a drop in sales that was certain to occur (and, in fact, did occur) when reports of Zyprexa's side effects surfaced, by creating a marketing plan for Zyprexa which included, as a primary component, the evaluation and pursuit of sales opportunities for the drug based on "off-label" uses;

      c.     that the growth rate in Zyprexa sales would not be sustainable once information about the health risks of Zyprexa and Lilly's illegal marketing plan were disclosed publicly;

      d.     that they disregarded data that undermined the "safety and effectiveness" of the drug;

      e.     that their "quality-assurance procedures relating to the quality and integrity of scientific information and production" as it pertained to Zyprexa were woefully inadequate;

      f.     that, by engaging in an illicit "off-label" marketing" program as to Zyprexa, they had not "enhance[d]" its policies and procedures designed to assure that its marketing and promotional practices and physician communications "comp[lied] with promotional laws and regulations;"

      g.     that they failed to warn the public of the serious health risks associated with Zyprexa use and that its illicit "off-label" marketing program was a direct violation of its own code of conduct; and

h.      that their illicit scheme of concealing the side effects of Zyprexa and engaging in a massive illegal off-label marketing campaign potentially subjected Lilly to substantial regulatory fines, penalties and other legal action, thereby compromising the Company's overall financial condition and prospects.

28.     Sales of Zyprexa grew from $3.69 billion to $4.42 billion between 2002 and 2004, and Lilly's stock price increased from $43.75 per share to $76.95 per share between July 18, 2002 and May 7, 2004.  Throughout the Class Period, defendants  had internal information concerning a dangerous connection between the use of Zyprexa and extreme weight gain and diabetes. During the Class Period, in the face of mounting independent research connecting Zyprexa to diabetes and weight gain, and the lawsuits by persons who suffered these side-effects, Lilly insiders emphatically denied any such link. Yet, as public agencies raised warnings about the safety of Zyprexa, sales slowed and Lilly's stock price dropped from $76.95 per share to $50.34 per share between May 7, 2004 and October 25, 2004 (representing a loss of market capitalization of over $30 billion).

28.     However, later reports in *The New York Times* demonstrate that Lilly insiders knew of the very health risks that it denied repeatedly and that the Company also purposefully marketed Zyprexa for illegal, off-label uses.

29.     Thus, the over $30 billion dollar decline in Lilly's stock price between May 7, 2004 and October 25, 2004 was the direct result of defendants' fraudulent conduct.

30.     Thereafter, articles appearing in *The New York Times* between December 17 and 21, 2006 publicly disclosed for the first time that (a) the Company had engaged in a prolonged effort to play down the health risks of Zyprexa; and (b) Lilly insiders actively marketed Zyprexa for illegal off-label uses (such as to treat older patients with symptoms of dementia). The

publication of those articles caused an additional $3.49 per share decline in the Company's stock price (or 6.4 percent), and represented a further market loss of approximately $3.5 billion.

31.     On January 31, 2008, *The New York Times* reported that:

Eli Lilly and federal prosecutors are discussing a settlement of a civil and criminal investigation into the company's marketing of the antipsychotic drug Zyprexa that could result in Lilly's paying more than $1 billion to federal and state governments.  If a deal is reached, the fine would be the largest ever paid by a drug company for breaking the federal laws that govern how drug makers can promote their medicines… Lilly may also plead guilty to a misdemeanor criminal charge as part of the agreement, the people involved with the investigation said.

## **DEMAND FUTILITY**

32.     Plaintiff brings this action derivatively in the right and for the benefit of Lilly to redress damage suffered and to be suffered by Lilly as a direct result of Defendants' breaches of fiduciary duty and/or violations of federal securities laws.

33.     As a result of the facts set forth herein, plaintiff has not made any demand on the Lilly Board to institute this action, and need not do so in the future.  Such demand would be a futile and useless act because the Lilly Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.  There is reasonable doubt that the Lilly Board can fairly address whether suit should be brought on behalf of Lilly for the following reasons:

a.     The current Board of Lilly consists of the following 12 individuals: Sidney Taurel, John C. Lechleiter, Winfried Bischoff , J. Michael Cook, Martin S. Feldstein, George M.C. Fisher, J. Erik Fyrwald, Alfred G. Gilman, Karen N. Horn, Ellen R. Marram , Franklyn G. Prendergast,  and  Kathi P. Seifert;

b.     Because  Defendants  Taurel's  and  Lechleiter's  principal  professional

occupations is their employment with Lilly, pursuant to which they received and continue to receive substantial monetary compensations and other benefits, they are not independent;

      c.    The facts set forth at length herein demonstrate that the Directors knew of or consciously disregarded the continuing pattern of non-compliance with legal and ethical requirements in the marketing and sale of Zyprexa, and safety and other public disclosure violations regarding this drug, and knew or consciously disregarded that the continued failure to comply with those safety, marketing and securities law requirements would result in severe penalties and consequences to the Company. Yet, the Director Defendants consciously ignored repeated red flags raised by public agencies and lawsuits, numerous product liability lawsuits, and internal studies and chose not to bring a halt to the improper conduct causing the non-compliance, nor did they timely reprimand those persons involved or seek redress for Lilly for the severe damages it has sustained;

      d.    The entire Board of Directors of Lilly, by its actions and inaction, consciously breached its fiduciary duties to Lilly and its shareholders, and each Board member faces a substantial likelihood of liability;

      e.    Any suit brought about by the Company's current Board members, to remedy the wrongs alleged herein, would likely subject the Individual Defendants to additional lawsuits being filed against one or more of the Individual Defendants. Thus, the Individual Defendants are conflicted in making any supposedly independent determination whether to sue themselves;

      f.    In fact, Lilly has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein. The Defendant Directors, however, have yet to file

a single lawsuit against themselves or any others who were responsible for the wrongful conduct so as to recover those losses for the Company;

        g.      Finally, if the current directors were to pursue this derivative litigation against themselves, they would effectively expose their own misconduct, which relates to allegations brought in numerous class action complaints. Such exposure of adverse facts would: 1) impair their defense of those class actions; and 2) greatly increase the probability of their personal liability in those actions, either directly, for breach of fiduciary duty, or by way of contribution. In other words, if the current defendants were to bring this derivative action against themselves, they would be forced to take positions contrary to the defenses Lilly will assert in the securities class actions and contrary to their own personal interests, and this they will not do; and

        h.      If Lilly's current and past officers and directors are protected against personal liability for their wrongful acts as alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, i.e., monies belonging to the stockholders of Lilly. However, directors' and officers' liability insurance policies covering Defendants generally contain provisions that eliminate coverage for any action brought directly by Lilly against these Defendants, known as, *inter alia,* the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Lilly, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all then the current directors will not cause Lilly

to sue to recover what would largely be a substantial liability for which insurance would be unavailable.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### (Against The Class Action Individual Defendants for Contribution Pursuant to Sections 10(b) and 21D of the Exchange Act)

34.     Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.  This cause of action is asserted against those individual defendants who have also been named as defendants in the related securities fraud class actions (the "Class Action Individual Defendants").

35.     The Class Action Individual Defendants had a duty not to defraud the investing public by the dissemination of materially false and misleading press releases and the dissemination of materially false and misleading financial information and projections.

36.     The Class Action Individual Defendants have been sued in the Securities Class Action alleging that the Class Action Individual Defendants caused the Company to issue false and misleading statements as alleged above and, as a result, the Company and these defendants violated Section 10(b) of the Exchange Act.

37.     It is alleged in the Securities Class Action that the Class Action Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. These Defendants,

15

by virtue of their receipt of information reflecting the true facts regarding Lilly, their control over, and/or receipt and/or modification of Lilly's allegedly materially misleading misstatements and/or their associations with the Company that made them privy to confidential proprietary information concerning Lilly, participated in the fraudulent scheme alleged herein.

38.    These Individual Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public.   The ongoing alleged fraudulent scheme alleged in the Securities Class Action could not have been perpetrated over a substantial period of time without the knowledge and complicity of the personnel at the highest level of the Company, including these Individual  Defendants.

39.    During the Class Period, it is alleged in the Securities Class Action Complaint that the Class Action Individual Defendants carried out a plan, scheme and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including the Class members, as alleged herein; (ii) enabled Defendants to register for sale with the SEC, millions of shares of their privately held Company stock; (iii) enabled Lilly and certain Company insiders to sell approximately $122 million of their privately held Lilly shares while in possession of material adverse non-public information about the Company; and (iii) caused plaintiff and other members of the Class to purchase Lilly common stock at artificially inflated prices.  As alleged in the Securities Class Action, these defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or failed to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Lilly's

common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. These defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

40.    In addition to the duties of full disclosure imposed on these defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they each had a duty to disseminate truthful information promptly that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. § 210.01 et seq.) and S-K (17 C.F.R. § 229.10 et seq.) and other SEC regulations, including  accurate and truthful information with respect to the Company's business, so that the market prices of the Company's publicly traded securities would be based on truthful, complete and accurate information.

41.    It is alleged in the Securities Class Action that the Class Action Individual Defendants, individually and in concert, directly and indirectly, by the use of the mails or other means or instrumentalities of interstate commerce, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, and future prospects of Lilly as specified  herein.  These Defendants are alleged to have employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Lilly's value and future profitability. This included the making of, or the participation in the making of, untrue statements of material facts and failed to state material facts necessary in order to make the statements made about Lilly and its business, operations and future prospects, in

the light of the circumstances under which they were made, not misleading, and engaging in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Lilly securities during the Class Period.

42.    As alleged in the Securities Class Action, as a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Lilly's securities was artificially inflated during the Class Period.  Unaware of the fact that the market price of Lilly's shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by these defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by these defendants but not disclosed in public statements during the Class Period, Class members acquired Lilly's securities during the Class Period at artificially high prices and were damaged thereby.

43.    As alleged in the Securities Class Action, at the time of said misrepresentations and omissions, the Class members were unaware of their falsity, and believed them to be true.  Had the members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of Lilly, which were not disclosed by these defendants, members of the Class would not have purchased or otherwise acquired their Lilly securities during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

44.    As alleged in the Securities Class Action, by virtue of the foregoing, these Individual Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5.

45.    It is further alleged in the Securities Class Action that the Company participated in the wrongful conduct and is equally liable for violation of Section 10(b) of the Exchange Act. Assuming that the Company is liable, these Individual Defendants caused the Company to violate Section 10(b) of the Exchange Act, and incur liability for damages for violation of the federal securities laws.

46.    If the Company is deemed to have violated the federal securities laws, and incurs damages therefore, the Class Action Individual Defendants are liable to the Company for contribution pursuant to sections 10(b) and 21(D) of the Exchange Act.

## SECOND CAUSE OF ACTION

### Against All Defendants for Breach of Fiduciary Duty

47.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

48.    The Individual Defendants owed and owe Lilly fiduciary obligations. By reason of their fiduciary relationships, they owed and owe Lilly the highest obligation of good faith, fair dealing, loyalty and due care.

49.    The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

50.    Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the business results of the Company, took actions which were not legitimate, and failed to correct the Company's publicly reported financial results and guidance. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

51.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Lilly has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

52.    Plaintiff on behalf of Lilly has no adequate remedy at law.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties.

B.    Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company for contribution;

C.    Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.    Granting such other and further relief as the Court deems just and proper.


DATED: April 8, 2008.


Respectfully Submitted

Daniel E. Clement (DEC-4674)
LAW OFFICES OF DANIEL CLEMENT

220 Fifth Avenue
13th Floor
New York, NY 10001
Telephone: (212) 683-9551
Facsimile:  (212) 683-9661
dclement@clementlaw.com

Samuel R. Simon, Esq. (SRS-8761)
1800 JFK Blvd.
Suite 404
Philadelphia, PA 19103
Telephone 215-569-9701
Facsimile 215-569-9788

*Attorneys for Plaintiff*

## VERIFICATION

Samuel R. Simon, Esq. avers, under pain and penalty of perjury, that he as counsel for plaintiff verifies that he has reviewed the foregoing Shareholder's Derivative Complaint, and that the allegations set forth therein are true and correct to the best of his knowledge and belief.

Dated:  April 7, 2008

Samuel R. Simon